T.C. Memo. 2010-114

UNITED STATES TAX COURT

SANDRA LEE BENNETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5956-08.                    Filed May 25, 2010.

Sandra Lee Bennett, pro se.

<u>Blaine Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, <u>Judge</u>:  In December 2007 the Internal Revenue
Service (IRS) issued to petitioner Sandra Lee Bennett a statutory
notice of deficiency pursuant to section 6212,[1] showing the IRS's

---

[1]Unless otherwise indicated, all citations of sections refer
to the Internal Revenue Code of 1986 (Code; 26 U.S.C.), as
amended, and all citations of Rules refer to the Tax Court Rules
of Practice and Procedure.

determination of a deficiency of $31,979 in income tax for 2005 and an accompanying accuracy-related penalty of $6,935.80 under section 6662(a). The issues for decision[2] are (1) whether Ms. Bennett is entitled to deductions that she claimed for 2005 on her Form 1040, U.S. Individual Income Tax Return--i.e., (a) $6,956.25 that she claimed on Schedule A, Itemized Deductions; (b) $96,325.65 that she claimed as business expenses on Schedule C, Profit or Loss From Business; and (c) $29,137.13 that she claimed as rental activity expenses on Schedule E, Supplemental Income and Loss; and (2) whether Ms. Bennett is liable for the accuracy-related penalty under section 6662(a). On the facts proved at trial, we hold (1) that Ms. Bennett is entitled to deduct $22,964.25 on Schedule A, $2,321.63 on Schedule C, and $0 on Schedule E, and (2) that Ms. Bennett's deficiency constitutes a "substantial understatement of income tax" incurring the accuracy-related penalty.

FINDINGS OF FACT

Trial of this case was held in St. Paul, Minnesota, on September 16, 2009. The stipulation of facts filed that day and the attached exhibits are incorporated herein by this reference.

---

[2]The parties agree that Ms. Bennett's self-employment tax and her deduction of half that tax from adjusted gross income are computational issues that depend on our resolution of the other issues in this case.

At the time she filed her petition, Ms. Bennett resided in Minnesota.

Personal expenses

In 2005 Ms. Bennett owned a house with a mortgage. In that year she paid a total of $17,048.80 in interest on that mortgage, and she paid real estate taxes of $3,140 on that house.[3] In 2005 Ms. Bennett also paid medical expenses of $2,710, and she made charitable contributions totaling $1,045.

Real estate sales activity

In 2005 Ms. Bennett was a real estate sales agent, and on her return she reported gross receipts of $94,931.02. Ms. Bennett was a 5-percent partner in Real Estate and Mortgage Consultants (REMC),[4] a firm of which her daughter and son-in-law owned 40 percent. REMC had eleven partners and employed about 50 agents. Ms. Bennett used the REMC premises for some purposes, but on her return she gave her residence address as her business address. The record does not show what if any portion of her home she used as an office for her real estate business.

---

[3]Ms. Bennett claimed itemized deductions for tax and interest on Schedule A in smaller amounts because she claimed deductions on Schedules C and E for some of the tax and interest on her house. Because we disallow those deductions on Schedules C and E, we allow them in full on Schedule A.

[4]On Schedule E to her 2005 return, Ms. Bennett reported a non-passive loss of $5,172 from REMC, which she in turn carried over to line 17 of her Form 1040. The notice of deficiency did not make any adjustment to this loss from REMC, and we therefore do not disallow it.

REMC paid some expenses for the agents who worked through the firm, and the firm's practice was to recoup those expenses from commissions that the agents earned. "QuickReports" records printed out by REMC showed that it had paid various expenses on Ms. Bennett's behalf but did not show that her expenses had ever been recouped by REMC from her commissions. There is no evidence that Ms. Bennett kept books or records of her real estate business, apart from her canceled checks, bank and credit card statements, and receipts that she kept in varying states of illegibility and disarray.

In September 2004 Ms. Bennett joined with another individual in acquiring property in White Bear Lake, Minnesota. She did not offer evidence of what she paid in 2004 for her share in the property nor of what expenses she bore in 2005. Although she alleges that this property bears some relation to her real estate sales business, the record does not show any such relation, and we find that there is no such relation.

In 2005 Ms. Bennett and some of her relatives and other acquaintances traveled to Arizona, and she spent money there to improve a house that she owned. However, Ms. Bennett was not licensed to sell real estate in Arizona, and did not make any sales in Arizona. The record includes no evidence of any attempts to sell real estate in Arizona. We find that

Ms. Bennett's Arizona-related activities in 2005 did not relate to her real estate sales business.

On the Schedule C to her 2005 return, Ms. Bennett reported business expenses totaling $96,325.65. We find that she substantiated that she actually paid business expenses totaling $2,321.63.

Rental activity

Ms. Bennett claims that in 2005 she rented out an apartment in her residence. However, the evidence in the record does not substantiate that claim. Ms. Bennett owns a house in Arizona, and she claims that she rented it out for three months of 2005. However, the evidence in the record does not substantiate that claim. We find that Ms. Bennett did not prove that she rented out these properties in 2005.

Return, notice of deficiency, and petition

To prepare her return for 2005, Ms. Bennett hired Robert Wicker. Mr. Wicker has been convicted of the crime of aiding and abetting multiple clients in fraudulently preparing their tax returns for multiple years and for fraudulent preparation of his personal tax returns for multiple years. Ms. Bennett provided Mr. Wicker with receipts and various information and relied on him to prepare her return. Mr. Wicker composed a mileage log that he used for computing her car and truck expense, and he composed a meal log that he used for computing her deductible

meals and entertainment. Ms. Bennett signed her 2005 return in July 2006 and submitted it to the IRS thereafter.

In December 2007 the IRS issued to Ms. Bennett a notice of deficiency, which disallowed all of her deductions on Schedules A, C, and E. Ms. Bennett timely filed her petition. The case was originally scheduled to be tried in February 2009; but when the case was called from the calendar, the Court continued the case to permit it to be better prepared for trial, and the case was tried seven months later in September 2009.

OPINION

I. Burden of proof and substantiation

At issue is Ms. Bennett's entitlement to deductions. Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that she is entitled to any deduction she claims. Rule 142(a); see also Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). (Ms. Bennett makes no argument that the burden should shift under section 7491(a), and the record shows no basis for such a contention.) When this case was originally called for trial on February 9, 2009, the Court observed that the evidence for the case was not in order, stated to Ms. Bennett that she bears the burden of proof, and then continued the case so that Ms. Bennett could be ready for trial. We are confident that she had every opportunity to prepare to meet her burden of proof.

A taxpayer's burden of proof should be understood in the context of what the Code requires for record-keeping and substantiation. Section 6001 requires that--

> Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. * * *

The regulations implementing that statute include 26 C.F.R. section 1.6001-1(a), Income Tax Regs.,[5] which provides that "any person subject to tax" (such as Ms. Bennett) is required to

> keep such permanent books of account or records * * * as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax * * *.

Ms. Bennett, however, offered into evidence no "permanent books of account" for her businesses (nor did she testify that she even kept books of account).

The Code's substantiation rules are subject to some flexibility. When a taxpayer adequately establishes that she paid or incurred a deductible expense but does not establish the precise amount, the Court may in some instances estimate the

_____

[5]See also 26 C.F.R. sec. 1.446-1(a)(4), Income Tax Regs. ("Each taxpayer is required to make a return of his taxable income for each taxable year and must maintain such accounting records as will enable him to file a correct return. See section 6001 and the regulations thereunder. Accounting records include the taxpayer's regular books of account and such other records and data as may be necessary to support the entries on his books of account and on his return, as for example, a reconciliation of any differences between such books and his return").

allowable deduction, bearing heavily against the taxpayer whose inexactitude is of her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  There must, however, be sufficient evidence in the record to provide a basis upon which an estimate may be made and to permit the Court to conclude that a deductible expense, rather than a non-deductible personal expense, was incurred in at least the amount allowed.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

However, certain business expenses described in section 274(d) are subject to strict substantiation rules that supersede the Cohan doctrine.  Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Section 274(d) applies to:  (1) any traveling expense, including meals and lodging while away from home; (2) entertainment, amusement, and recreational expenses; (3) any expense for gifts; and (4) the use of "listed property", as defined in section 280F(d)(4), including passenger automobiles.  Some of Ms. Bennett's expenses are in these categories.  To deduct such expenses, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) the amount of the expenditure or use, which includes mileage in the case of automobiles; (2) the time and place of the travel, entertainment, or use; (3) its business purpose; and in the case

of entertainment, (4) the business relationship to the taxpayer of each expenditure or use.  Sec. 274(d) (flush language).

The documents Ms. Bennett did keep were largely insufficient--even under the Cohan rule, and all the more under section 274(d), where it applies--to substantiate most of the deductions she claims.

## II.   Itemized deductions on Schedule A

### A.   Medical expenses

On her Schedule A Ms. Bennett claimed deductions for medical expenses of $2,628.53.  Respondent concedes that she incurred $1,168.70 of such expenses--a total of amounts that are substantiated by documents that reflect the medical provider, the date of treatment, the date of payment, the amount covered by insurance, and Ms. Bennett as the patient.  We find that Ms. Bennett also substantiated deductible medical expenses by means of 13 checks payable to her doctors, totaling $472.25, and three premium payments to her health insurer totaling $1,069.50. Other amounts reflected on EOBs (explanations of benefits) from her insurer do not show evidence of payment by Ms. Bennett.  Her deductible medical expenses therefore total $2,710.45.  (The tax benefit of this deduction will depend on the extent to which it exceeds 7.5 percent of her adjusted gross income.  See sec. 213(a).)

B.  <u>Taxes</u>

On her Schedule A Ms. Bennett claimed deductions for taxes totaling $1,561.60.  Of this total, $23 is designated as for "Auto Tabs", which she has evidently abandoned.  The remainder is a portion of the $3,140 in real estate taxes that she paid on her residence, which is substantiated by an "Annual Tax and Interest Statement" issued to her by her mortgage lender.  She claims the remainder as deductions on the Schedule C for her real estate business and on the Schedule E for her rental activity.  Because we deny the deductions on Schedules C and E, we allow Ms. Bennett the entire $3,140 as an itemized deduction for real estate taxes on Schedule A.

C.  <u>Interest</u>

On Schedule A Ms. Bennett claimed deductions for home mortgage interest totaling $1,000.97.  This is a portion of the $17,048.80 in interest that she paid on her residence, which is substantiated by the "Annual Tax and Interest Statement" issued to her by her mortgage lender.  She claims the remainder as deductions on the Schedule C for her real estate business and on the Schedule E for her rental activity.  Because we deny the deductions on Schedules C and E, we allow Ms. Bennett the entire $17,048.80 as an itemized deduction for interest on Schedule A.

D.    Charitable contributions

On Schedule A Ms. Bennett claimed deductions for charitable contributions totaling $1,765.15.  We find that she made deductible contributions to three donees totaling $65[6] and that she made deductible contributions to a fourth donee totaling $980.[7]

The amounts of itemized personal deductions that we allow compare as follows to what Ms. Bennett claimed on Schedule A to her return:

|  | Deductions on Schedule A | Deductions allowed |
|---|---|---|
| Medical expenses | $2,628.53 | $2,710.45 |
| Taxes | 1,561.60 | 3,140.00 |
| Interest | 1,000.97 | 17,048.80 |
| Contributions | 1,765.15 | 1,045.00 |
| Total | 6,956.25 | 23,944.25 |

---

[6]A $65 deduction is substantiated by her checks Nos. 8108, 8218, and 8219 (as to which three checks respondent concedes a deduction), and No. 8419 (as to which respondent does not concede a deduction).

[7]After trial respondent conceded a charitable contribution deduction for a greater amount--$1,030--evidenced by 20 checks payable to "His Present Glory" and a receipt in that amount from "3rd Day Ministries".  However, one of the checks in her listing (check No. 8403) is included as part of her substantiation for "cleaning and maintenance" expense.  It is a check for $50 payable to "His Present Glory", and on the "For" line at the bottom left-hand corner of the check is written "apt. cleaning". We therefore reduce the deduction by this amount, but we otherwise somewhat reluctantly accept respondent's concession.

III. Business expense deductions on Schedule C

Ms. Bennett was a real estate agent and did evidently conclude real estate transactions in 2005 that apparently generated commissions of $94,931.02 that she reported as gross receipts on Schedule C.  It is entirely plausible that she incurred deductible expenses in the course of that activity. However, the Court cannot accept Ms. Bennett's unsubstantiated and unexplained allegations of the amounts of those expenses but rather can allow deductions only for the expenses that have been substantiated.

A. General shortcomings of Ms. Bennett's Schedule C substantiation

1. REMC QuickReports

Some of Ms. Bennett's purported substantiation consists of statements from REMC.  REMC kept separate accounts for the several dozen agents who worked for it, paid various expenses, deducted those expenses from commissions earned by each agent, and then provided the agent with financial information, including an "Agent Account QuickReport" for expenses incurred on the agent's behalf.  Ms. Bennett relied solely on REMC QuickReports for substantiation of her advertising expenses, referral fees, and legal fees; and she relied in part on the REMC QuickReports for substantiation of her insurance and her office expenses. However, the QuickReports printouts explicitly acknowledge in a footer on each page:  "This is a print out of only the expenses

for the year.  <u>It does not show any payments or credits made to your account</u>.  This is just a guide for you to use while doing your taxes."  (Emphasis added.)  Thus, the REMC QuickReports do not purport to show that Ms. Bennett actually paid the expenses; they show only that REMC incurred the expenses and made corresponding entries on Ms. Bennett's internal account. Moreover, Ms. Bennett did not produce records to show that REMC calculated Ms. Bennett's commissions for its own internal reporting purposes on a gross basis before any reduction for the charges incurred on Ms. Bennett's behalf, or whether instead REMC reported only commissions due to Ms. Bennett after her expenses advanced by the firm had been recouped from commissions due her. More important, Ms. Bennett did not show whether, as "Gross receipts" on Schedule C, she reported gross commissions or instead reported net commissions paid to her after reduction for her charges.  If the latter, then allowing deductions on the basis of REMC's tallies of expenses on QuickReports would allow Ms. Bennett a double deduction for expenses that she paid. Therefore, the REMC QuickReports do not substantiate Ms. Bennett's entitlement to deductions for payment of expenses.

## 2.  Ms. Bennett's return preparer

Ms. Bennett relies on the testimony of her return preparer Mr. Wicker for various matters.  However, Mr. Wicker has been convicted of tax crimes, and we did not find his testimony

credible; and to the extent Ms. Bennett relies on his testimony for any aspect of her proof, her proof fails to be convincing.

### 3. Payments to Ms. Bennett's son

Some Schedule C deductions at issue involve payments for the benefit of Ms. Bennett's adult son. During the years at issue he was a drug addict, and he sometimes came to her with requests for money with which to pay his child support and other expenses (including dental expenses). Ms. Bennett declined to give him money but instead paid these expenses directly. The record in this case includes checks payable to Minnesota Child Support; but although Ms. Bennett testified that she paid $7,900 toward his dental expenses, the record does not seem to include documentation for those dental payments. Ms. Bennett claims that she made these payments on his behalf in return for work that her son performed for the business (an assertion for which her son gave corroborating testimony),[8] and she therefore claimed deductions for the payments as "commissions" expenses and as "vehicle, equipment and rental". However, Ms. Bennett provided

---

[8]Ms. Bennett's son testified: "I would constantly be mowing grass at one of her open houses, or shoveling sidewalks, or delivering fliers, or numerous things, non-stop". We find his testimony generally credible, but taking into account all the evidence we have no confidence that he performed business-related tasks in 2005 or that Ms. Bennett made payments in 2005 for business-related tasks. He assented to Ms. Bennett's leading question suggesting that his work and her payments occurred in 2005 ("this is kind of long ago, so I'm trying to remember what everything was. Q It was in 2005. A Right"); but we do not find that the testimony established the point.

no documentary evidence to show the amount or type of work her son performed, the date on which he performed it, or its connection with her real estate business.  Her son testified that she did not issue to him any Forms 1099 reporting the amounts she had paid him.[9]  The record includes no evidence as to whether he reported these amounts as taxable income.  We hold that payments on behalf of Ms. Bennett's son have not been substantiated as ordinary and necessary expenses of her real estate business.

### 4.    Arizona real estate sales activity

Some Schedule C deductions at issue consist of or include alleged expenditures in connection with real estate sales in Arizona.  However, Ms. Bennett was not licensed to sell real estate in Arizona in 2005 (and does not allege that she ever acquired such a license), and she had no sales in Arizona in 2005 (and does not allege that she has ever had a sale in Arizona).  Rather, she professes that it was her intention someday to sell real estate in Arizona.  Apart from her own subjective, unrealized intention to someday sell real estate in Arizona, she offered no evidence inconsistent with vacationing in Arizona, establishing a vacation home for herself in Arizona, or preparing

---

[9]We disregard Ms. Bennett's statement in her brief that "Petitioner has filed a Form 1099 Miscellaneous Income with the Internal Revenue Service, disclosing the payment of $7,900 to her son, Craig A. Bennett."  The statement has no support in the trial record, and it appears she may be describing a filing that she made after trial.

to retire in Arizona.  We hold that she has not carried her burden to prove that she undertook activity in Arizona with a view toward making a profit by selling real estate there.

Her Arizona deductions are also problematic in that many of them appear to constitute, at best, capital expenditures.  On brief she argues that much of her travel expense was to pay workers (i.e., her own relatives) to "work on her real property" and that she incurred $7,661.26 in Arizona-related supplies expenses "to bring the Arizona house up to code".  The receipts indicate that the work included installing hardwood flooring and a skylight.  The quantum of these supplies expenses suggests that they are unlikely to have been ordinary and necessary expenses of an ongoing business but are more likely the capital expenses of a renovation--providing significant improvement and future benefit to the property.  Section 162(a) allows a deduction for "ordinary and necessary" business expenses, and section 263(a) <u>disa</u>llows any deduction for "permanent improvements or betterments made to increase the value of any property or estate."  The regulations under section 162 elaborate on this distinction, discussing "repairs" as follows:

> The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense * * *. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance

with section 167 or charged against the depreciation
reserve if such an account is kept. [26 C.F.R.
sec. 1.162-4, Income Tax Regs.]

The regulations under section 263(a) are in harmony with that
provision:

In general, * * * [non-deductible capital expenditures]
include amounts paid or incurred (1) to add to the
value, or substantially prolong the useful life, of
property owned by the taxpayer, such as plant or
equipment, or (2) to adapt property to a new or
different use. Amounts paid or incurred for incidental
repairs and maintenance of property are not capital
expenditures within the meaning of subparagraphs (1)
and (2) of this paragraph. * * * [26 C.F.R.
sec. 1.263(a)-1(b), Income Tax Regs.]

Ms. Bennett did not show that her expenditures were for
deductible "incidental repairs" rather than a substantial capital
renovation. See Subt v. Commissioner, T.C. Memo. 1991-429. The
extensive nature of her work on the Arizona property suggests
that she was conducting a substantial renovation.

Any Arizona-related Schedule C expenses will be disallowed.

5. White Bear Lake property

Some Schedule C deductions at issue consist of alleged
expenditures in connection with property in White Bear Lake,
Minnesota. Ms. Bennett's name appears along with the name of
Brent Willenbring on the September 2004 Settlement Statement
(HUD-1), but only Mr. Willenbring's name appears on the documents
that Ms. Bennett proffers to substantiate payment of deductible
expenses, such as mortgage interest. A "taxpayer * * * [may]
deduct only his own interest payments and not interest paid on

behalf of another person or entity." S. Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 565 (1980). Ms. Bennett introduced no canceled checks, receipts, bank statements, or other documentation to show that she actually paid any of the expenses for this property;[10] and in the absence of any documentation or any corroboration of Ms. Bennett's share in the property, we hold that she has not carried her burden to prove that she has made any deductible expenditures in connection with this property.

B. Additional shortcomings of Ms. Bennett's proof regarding particular Schedule C expenses

1. Car and truck expenses

As is stated above, section 274(d) imposes stringent substantiation requirements for claimed deductions relating to the use of "listed property", which is defined under section 280F(d)(4)(A)(i) to include passenger automobiles. Under this provision, any deduction claimed with respect to the use of a passenger automobile will be disallowed unless the taxpayer substantiates specified elements of the use by adequate records or by sufficient evidence corroborating the taxpayer's own statement. See sec. 274(d); sec. 1.274-5T(c)(1), Temporary

---

[10]Marks that she has made on the Form 1098, Mortgage Interest Statement, for her residence may suggest that she attributes some of the interest on her home mortgage to this White Bear Lake property. However, no testimonial or documentary evidence establishes any such connection, and we therefore treat the entire $17,048.80 reported on Form 1098 as home mortgage interest deductible on Schedule A.

Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The elements that must be substantiated to deduct the business use of an automobile are: (i) the amount of the expenditure; (ii) the mileage for each business use of the automobile and the total mileage for all uses of the automobile during the taxable period; (iii) the date of the business use; and (iv) the business purpose of the use of the automobile. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Ms. Bennett's proof falls far short of this standard. She offered into evidence a mileage log purporting to substantiate 21,129 miles traveled for her real estate business (as compared to 30,186 claimed on her return). But neither that number nor any other has been substantiated. Her mileage log was prepared by Mr. Wicker. Her brief states that she "was forced to recreate her mileage log based on her date book"; but at trial she did not offer the date book nor present any testimony about an original log or any recreation of it. We find that she did not prove the miles that she drove for her real estate activity.

### 2. Commissions and fees

On Schedule C Ms. Bennett deducted $11,878.33 in "Commissions and fees". In her brief she claims a lesser amount--$8,701.15--but her proof consists of: (a) an REMC QuickReport entry for $573.75 (but see part III.A.1 above); (b) child support checks for her son (but see part III.A.3

above); (c) a voided check for $200; and (d) unexplained checks to or for the benefit of individuals about whom no testimony or written evidence was given at trial. Ms. Bennett has not substantiated deductible payments for "commissions and fees" in any amount.

### 3. Depreciation

On Schedule C Ms. Bennett deducted $5,531.11 in "Depreciation". Her substantiation for that deduction is a depreciation schedule and five checks dated 2005. The depreciation schedule lists nineteen items, at least ten of which appear to be personal items (china, two pizza ovens, gas grill, lawn edger, landscape equipment, tools, bike, TV, dishwasher), five of which might be personal or business-related (two computers, calculator, furniture, carpet), and one of which is unclear in its meaning ("2003 76 102 & 103"). Three of the 2005 checks bear no evident relation to any of the assets allegedly placed in service in 2005,[11] and no checks or other documents show Ms. Bennett's basis in any of the assets purchased before 2005. No testimony was given about any of the assets at trial.

---

[11]Two of the checks relate to a golf cart, and Ms. Bennett's brief refers to a golf cart supposedly on the depreciation schedule; but there does not in fact appear to be any entry for a golf cart on that schedule. Receipts that mention golf carts also appear in support of her "Repairs" expense for the Arizona property.

Ms. Bennett has not substantiated her entitlement to any depreciation deductions.

### 4. Insurance

On Schedule C Ms. Bennett deducted $743.85 for "Insurance". This allegedly consists of: (a) hazard insurance on Arizona property, which we disallow for the reasons explained above in part III.A.4, and (b) errors and omissions insurance documented solely by an REMC QuickReport print-out, which we disallow for the reasons explained above in part III.A.1. That is, all of the insurance expense is disallowed.

### 5. Interest

On Schedule C Ms. Bennett deducted $28,822.27 for "Interest". This allegedly consists of: (a) a portion of the interest on a mortgage loan for the Arizona property, which we disallow for the reasons explained above in part III.A.4; (b) mortgage interest and late-payment charges on the White Bear Lake property, which we disallow for the reasons explained above in part III.A.5; and (c) mortgage interest on Ms. Bennett's residence, which we allowed in full as a Schedule A itemized deduction and therefore disallow on Schedule C.

### 6. Legal and professional expenses

On Schedule C Ms. Bennett deducted $1,460 for "Legal and professional services". However, her substantiation consists of an REMC QuickReports print-out, which we disallow for the reasons

explained above in part III.A.1, and a photocopy of a check for $1,100 payable to her return preparer.  Only the front side of the check appears in the record, and the check is dated "08-15-04", whereas the year in issue is <u>2005</u>.  We hold that Ms. Bennett has not carried her burden to prove deductible legal and professional fees incurred in 2005.

### 7.  Office expense

On Schedule C Ms. Bennett deducted $1,014.82 in "Office expense".  Her substantiation includes REMC QuickReports print-outs and some illegible receipts that do not prove deductible expenditures; but we hold that she has proved, by legible checks and credit card statements, deductible postage expenses totaling $119.90.

### 8.  Rental expenses

On Schedule C Ms. Bennett deducted $10,673.74 in rental expenses, and she contends that at trial she substantiated $8,174.80.  She argues that of that total, $7,900 allegedly consists of her payment of rental car expenses for her son.  The record includes no evidence of any payment of $7,900 to anyone, and any such payments made for the benefit of Ms. Bennett's son are not deductible, for the reasons we explained above in part III.A.3.  The remainder of Ms. Bennett's evidence is difficult to read but may show payments of $32.80 and $242 to "Ruddy's Rental, Inc." for landscaping equipment and $170 for

"winterizing boat storage"; but because she offered no evidence to relate these expenditures to her business of real estate sales, we hold that she is not entitled to any deduction for rental expenses.

### 9. Repairs

On Schedule C Ms. Bennett deducted $184.70 for repairs. At trial she offered evidence of a check for $1,000 payable to an individual with the notation "Contract I.G. Heights". She offered no testimony either explaining who the payee was or describing any repair work performed. We therefore hold that this check does not substantiate any deductible expense. However, we find that documents she mistakenly included as part of her attempted proof of depreciation expenses do show a business-related computer repair expense of $169.

### 10. Supplies

On Schedule C Ms. Bennett deducted $2,038.62 for supplies. She offered into evidence checks and receipts totaling $1,993.32, but she offered no testimony about them. Some are illegible; some explicitly pertain to a Fourth of July party (about which she gave no testimony); some are unexplained checks to individuals; some may be capital costs of the Arizona renovation (see supra part III.A.4); and most show purchases at Wal-Mart, Target, Home Depot, Sam's Club, Dollar Store, Party Town, and Goodwill--stores from which one might make deductible business

purchases but from which one might also make non-deductible personal purchases. We hold that these documents do not carry Ms. Bennet's burden to prove deductions for supplies. However, Ms. Bennett's documentation for supplies also includes checks to the board of realtors (for $49.73) and a key box servicing company (for $44.73), which justify a deduction totaling $94.46.

11. Taxes

On Schedule C Ms. Bennett deducted $11,516.84 in real estate taxes allegedly paid on the White Bear Lake property and the Arizona property, for which her substantiation is Forms 1098 bearing amounts of taxes that she apportions in part to Schedule C. However, as we noted above in part III.A.5, the Form 1098 for the White Bear Lake property does not bear her name (and is not accompanied by any evidence of her bearing the expense); as we noted above in part III.A.4, the Arizona property has no demonstrated business connection. Ms. Bennett has not proved a Schedule C deduction for taxes.

12. Travel, meals, and entertainment

On Schedule C Ms. Bennett deducted $1,089.20 in travel expenses; and at trial she offered credit card statements that she argues show $2,470.10 in payments to travel agents for business-related travel. A taxpayer may not deduct travel expenses (including meals and lodging while away from home) unless she substantiates by adequate records or sufficient

evidence corroborating her own statements: (A) the amount of the expense, (B) the time and place of the travel; and (C) the business purpose of the travel. Sec. 274(d). Under the regulations, to meet the section 274(d) "adequate records" requirement, a taxpayer "shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure." 26 C.F.R. sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). The elements she must prove for each travel expense are the amount, time, place, and business purpose of the travel. 26 C.F.R. sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). The destinations evident on the statements are Cozumel (Mexico), Minneapolis, Treasure Island Resort in Wisconsin, and Florida (which Ms. Bennett's post-trial brief indicates refers to Miami, Florida). At trial she offered no business justification for any travel other than to Arizona, and the evidence submitted reveals no business purpose for those trips. (We disregard the unsupported explanations given for the first time in her post-trial brief.) Arizona-related expenses are not deductible for the reasons we explain above in part III.A.4. We hold that Ms. Bennett has not substantiated deductible travel expenses.

On Schedule C Ms. Bennett deducted $937.36 in meals and entertainment expenses. Meals and entertainment expenses claimed as deductions under section 162 are, with limited exceptions, subject to the substantiation requirements of section 274(d). 26 C.F.R. section 1.274-5T(c)(1), Temporary Income Tax Regs., supra, requires a taxpayer to substantiate each element of an expenditure by adequate records or by sufficient evidence corroborating his own statements. At trial Ms. Bennett offered checks, receipts, and credit card statements that she argues show $2,085.54 in payments for business related meals and entertainment. Some (but not all) of the checks and charges do bear the names of restaurants, but none of them reflects that the meal was business-related. Included among her receipts is a log--about which she offered no testimony at trial--that purports to total $1,879.12 of meal expenses. The log was apparently written by Mr. Wicker, but the record includes no information about what sources he used to compile the information. Some but not all of the entries include the name of an individual (presumably, the alleged guest for the meal), and a few include a phrase about a meeting. However, in the absence of explanatory and corroborating testimony, we find the log to be unreliable, and we hold that Ms. Bennett did not prove any amount of deductible expense for meals and entertainment.

### 13.  <u>Utilities</u>

On Schedule C Ms. Bennett deducted $1,459.45 for "Utilities", and at trial she offered bank statements and canceled checks showing payments for telephone use.  It is to be expected that a real estate agent would incur business expense for telephone service.  However, Ms. Bennett gave no testimony to explain her substantiating documents, and they are confusing. They appear to show monthly payments to Qwest throughout all of 2005 (totaling $1,272.04), four payments to Cingular (in April, May, November, and December), five payments to AT&T wireless (in January, February, May, August, and November), and one payment to "Lisa Wireless" (in March).  Ms. Bennett did not explain how she could have incurred charges to all those companies, nor how we can distinguish between deductible payments for business phone use and non-deductible payments for personal phone use. Consequently, we allow no deduction for payments to any of the companies other than Qwest, the only company to which she made regular payments for the entire year.  Most of the Qwest checks show that they pay for two different telephone numbers, with the monthly charges to one of the numbers consistently equaling about $56 (i.e., about $672 per year), and the charges to the other number as somewhat less than that.  Section 262(b) prohibits a taxpayer's deducting the cost of basic local telephone service for the first telephone line provided to her residence, because

that expenditure is a personal expense.  Ms. Bennett has not shown that she had a home telephone number in addition to the two Quest numbers she claimed on Schedule C.  In view of Ms. Bennett's having the burden of proof, we conclude that she has shown no more than that she incurred deductible business phone expense of $600.04 (i.e., the $1,272.04 paid to Qwest minus $672 as the presumed charge for a personal phone number).

### 14.  Other expenses

On Schedule C Ms. Bennett deducted $1,926.83 as "Other expenses", broken down into customer costs, periodicals, security, education, MLS dues, and client carpet cleaning.  At trial she gave no testimony about these expenses, and we do not use her statements in her brief to make up what is lacking in her evidence.  Her $208 periodicals expense is for her subscription to the local newspaper--a personal expense, absent proof of a business purpose.  Her $35 security expense is unexplained.  Her education expense, substantiated by a $79 check to an individual marked "Cont. Ed", may pertain to a business education expense, but without more explanatory evidence we cannot say that she proved it is deductible.  Multiple Listing Dues of $326 is a plausible expense for a real estate agent, but her only proof is an REMC QuickReports print-out that is inadequate for the reasons we explain above in part III.A.1.  We find, however, that her evidence does include credible and self-explanatory evidence

showing a client carpet cleaning expense of $160.73 and other customer costs of $1,177.50 (for home inspections, dead bolt repair, cleaning, and appraisals). Her allowable "Other expenses" therefore total $1,338.23.

The expenses that Ms. Bennett substantiated, as compared to the deductions she claimed on Schedule C, are as follows:

|  | Expenses reported on Schedule C | Expenses substantiated |
|---|---|---|
| Advertising | $3,958.84 | -0- |
| Car and truck expense | 13,030.29 | -0- |
| Commissions and fees | 11,878.33 | -0- |
| Depreciation | 5,531.11 | -0- |
| Insurance | 743.85 | -0- |
| Interest | 28,822.27 | -0- |
| Legal and professional | 1,460.00 | -0- |
| Office expense | 1,014.82 | $119.90 |
| Rent: Vehicles | 10,588.74 | -0- |
| Rent: Other | 85.00 | -0- |
| Repairs and maintenance | 184.70 | 169.00 |
| Supplies | 2,038.62 | 94.46 |
| Taxes and licenses | 11,516.84 | -0- |
| Travel | 1,089.20 | -0- |
| Meals and entertainment | 937.36 | -0- |
| Utilities | 1,459.45 | 600.04 |
| Other expenses | 1,986.23 | 1,338.23 |
| Total | 96,325.65 | 2,321.63 |

IV. Rental expenses on Schedule E

On Schedule E Ms. Bennett reported the rental of two properties--the Arizona property and an alleged apartment in her principal residence. Although she reported rental receipts of

$4,500 for the apartment and $6,000 for the Arizona property,[12] she claimed deductions in amounts that greatly exceeded the reported rental receipts, and she therefore reported losses of $6,944.73 on the apartment and $11,692.40 on the Arizona property, totaling $18,637, which she in turn included (as a loss) on line 17 of Form 1040.

Ms. Bennett did not offer into evidence any lease or other documentary information showing that the properties had in fact been rented out in 2005. She could not recall the name of the 2005 tenant in the apartment. She claims that the apartment constitutes 51 percent of the house in which she resides, and she therefore claims as deductions 51 percent of various household expenses (utilities, cleaning, supplies); but she presented no floor plan of the house showing a 51/49 allocation, and she gave no testimony about how she arrived at the allocation. Her return preparer testified summarily that he had measured the property himself and found those percentages, but we did not find his testimony to be credible. Her deductions for the apartment on

---

[12]Ms. Bennett did not contend in the alternative that, if her deductions were disallowed, then her income ought to be reduced by the amount of the rental receipts reported. Although we find that she failed to prove that she rented out the properties as she alleged, we do not find that she did not receive the income that she reported on Schedule E. Ms. Bennett did not make any showing about the nature of those receipts, the identities of the payors, the accounts into which she deposited them and thus did not assert or prove any theory under which her income should be reduced.

Schedule E included mortgage interest and real estate tax, and we disallow those as Schedule E expenses; but, as we have said, we allow them in full on Schedule A as itemized deductions.

As we noted above (in part III.A.4), Ms. Bennett's brief states that the Arizona property was not up to code, and her substantial repair expenses ($1,409.41) and supplies expenses ($9,234.58) claimed for the Arizona property on Schedule E indicate that she was undertaking a capital renovation of the property in 2005 rather than incurring "ordinary and necessary expenses". Furthermore, the fact that the work was needed in order to bring the building up to code makes it unlikely that she had a tenant before those improvements had been completed.

Even if Ms. Bennett had proved that the properties were actually rented out in 2005, she would need also to substantiate the specific expenses (and show that they were not capital improvements). We will not analyze in detail her evidence for each category of expense, but we note that her proof for most of these items includes illegible and unexplained documents that sometimes raise more questions than they answer (e.g., a receipt from a veterinarian for treatment of her dog "Benji"). We hold that Ms. Bennett has not substantiated any rental activity deductions claimed on Schedule E.

## V.   Section 6662(a) accuracy-related penalty

The IRS determined that Ms. Bennett is liable for the accuracy-related penalty of section 6662(a) because her underpayment was a "substantial understatement of income tax" under section 6662(b)(2).[13]  By definition, an understatement of income tax is substantial if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return.  Sec. 6662(d)(1)(A).  Pursuant to section 7491(c), the Commissioner bears the burden of producing sufficient evidence showing the imposition of the penalty is appropriate in a given case.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); Higbee v. Commissioner, supra at 447.

The parties will be instructed to recompute Ms. Bennett's liability in accordance with this decision, but for purposes of section 6662(a) we can make a rough calculation of only one component of that liability--the Social Security portion of self-

---

[13]The notice of deficiency also supports the accuracy-related penalty on two alternate grounds:  Under section 6662(b)(1), the accuracy-related penalty is also imposed where an underpayment is attributable to the taxpayer's negligence or disregard of rules or regulations; and under section 6662(b)(3) the penalty is imposed where there is a "substantial valuation misstatement".  However, as we show below, respondent has demonstrated that Ms. Bennett substantially understated her income tax for 2005 for purposes of section 6662(b)(2).  Thus, we need not consider whether Ms. Bennett might also be liable under section 6662(b)(1) or (3).

employment tax--that shows that her understatement is substantial.  Since Ms. Bennett reported a tax liability of zero, any liability computed will be an understatement and will be not just 10 percent but rather 100 percent of the liability required to be shown on the return.  Therefore, the question to be answered is whether the liability will also be greater than $5,000, and it is easy to see that it will:

Ms. Bennett's Schedule C reported gross receipts of $94,931.02, and when the deductions of $2,321.63 that we allow are subtracted therefrom, her self-employment income equals $92,609.39.  Section 1401(a) imposes a tax of 12.4 percent on the first $90,000 of that self-employment income and yields a liability of $11,160--i.e., greater than $5,000.  Her income tax and the hospital insurance component of self-employment tax will only increase that liability.  Respondent has therefore carried the burden of production imposed by section 7491(c).

Ms. Bennett states that she "leaves it to the discretion of the Court whether to apply the Accuracy Penalty in this matter." However, where an understatement of income tax is substantial, the accuracy-related penalty is not discretionary but mandatory; the statute provides that it "shall be added".  Sec. 6662(a).

Ms. Bennett bears the burden of proving any defenses,[14] see

Higbee v. Commissioner, supra at 446, but she asserted none.  We

therefore sustain the accuracy-related penalty.

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[14]A taxpayer who is otherwise liable for the accuracy-related penalty may avoid the liability if she successfully invokes one of three other provisions:  Section 6662(d)(2)(B) provides that an understatement may be reduced, first, where the taxpayer had substantial authority for her treatment of any item giving rise to the understatement or, second, where the relevant facts affecting the item's treatment are adequately disclosed and the taxpayer had a reasonable basis for her treatment of that item.  Third, section 6664(c)(1) provides that if the taxpayer shows that there was reasonable cause for a portion of an underpayment and that she acted in good faith with respect to such portion, no accuracy-related penalty shall be imposed with respect to that portion.  The record suggests no basis for any of these defenses.